No. 23-2287

# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

ROBERT E. STAFFORD, JR., MELISSA BONETTI, HERBERT MALLET, JACQUELINE JOHNSON, CATHRINE ALLEN, DEVRON JONES, TABITHA DANIEL, LAQUASHA OSAGHEE and RONDA COLE, on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellees*,

v.

BOJANGLES' RESTAURANTS, INC.,

*Defendant-Appellant.*

On Appeal from the United States District Court for the Western District of North Carolina

# RESPONSE BRIEF OF APPELLEES

L. Michelle Gessner
GESSNERLAW, PLLC
602 East Morehead Street
Charlotte, North Carolina 28202
Tel: (704) 234-7442
Fax: (980) 206-0286
Email: michelle@mgessnerlaw.com

*Class Counsel for Plaintiffs-Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _____      Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____

(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO

2.      Does party/amicus have any parent corporations?                           YES      NO
        If yes, identify all parent corporations, including all generations of parent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                               YES      NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                    YES    NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    YES    NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    YES    NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    YES    NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____    Date: _____

Counsel for: _____

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................i

TABLE OF AUTHORITIES.......................................................................iii

INTRODUCTION....................................................................................... 1

STATEMENT OF THE CASE...................................................................... 3

STANDARD OF REVIEW........................................................................... 6

SUMMARY OF ARGUMENT...................................................................... 7

ARGUMENT..............................................................................................10

    A.    Preliminary discussion about *Wal-Mart*...................................... 10

    B.    Bojangles has failed to show the district court abused its discretion in finding the Opening Checklist meets the commonality prerequisite............................14

        1.    The district court did not fail to conduct a rigorous analysis of the evidence nor did it apply an incorrect standard of review............................ 14

        2.    The district court did not misapply *Wal-Mart's* definition of a "common question."................................... 17

    C.    Bojangles has failed to show that the district court abused its discretion related to other off-the-clock work............23

        1.    Bojangles erroneously challenges a statement made in the district court's analysis of typicality.........................................................23

        2.    Plaintiffs' "policy to violate the policy" claim nonetheless meets the requirements for commonality................................................................. 24

i

D.     Bojangles has failed to show that the district court abused its discretion in finding that Plaintiffs met the predominance prerequisite................................................32

     1.   The district court did, in fact, conduct a predominance analysis......................................................... 32

     2.   Common questions, in fact, predominate over individualized questions.............................................. 33

CONCLUSION.................................................................................... 41

STATEMENT REGARDING ORAL ARGUMENT............................................ 41

CERTIFICATE OF COMPLIANCE.......................................................... 42

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)................................................................................ 6

*American Football League v. National Football League,*
    323 F.2d 124 (4th Cir. 1963) ........................................................... 11

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds,*
    568 U.S. 455 (2013)................................................................... 11, 20

*Anderson v. City of Bessemer City, N.C.,*
    470 U.S. 564 (1985)........................................................................... 7

*Antemate v. Estenson Logistics, LLC,*
    2015 U.S. Dist. LEXIS 83543 (C.D. Cal. June 15, 2015) .............................. 35

*Bell v. PNC Bank, Nat'l Ass'n,*
    800 F.3d 360 (7th Cir. 2015) .................................................... 25, 37

*Berber v. Hutchison Tree Serv.,*
    2018 U.S. Dist. LEXIS 137038 (E.D.N.C., Aug. 14, 2018).......................... 34

*Brown v. Nucor Corp.,*
    785 F.3d 895 (4th Cir. 2015) .................................................... 6, 18

*Campbell v. Vitran Express Inc.,*
    2015 U.S. Dist. LEXIS 155512 (C.D. Cal. 2015) ................................. 34, 36

*Central Wesleyan Coll. v. W.R. Grace & Co.,*
    6 F.3d 177 (4th Cir. 1993) ............................................................ 15

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982).......................................................................... 10

*Crowe v. Cherokee Wonderland, Inc.,*
    379 F.2d 51 (4th Cir. 1967) ............................................................. 6

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) .......................................................... 18

*Deiter v. Microsoft Corp.*,
    436 F.3d 461 (4th Cir. 2006) .......................................................... 23

*Dilts v. Penske Logistics, LLC*,
    267 F.R.D. 625 (S.D. Cal. 2010) .................................................... 35

*Durham v. Sachs Electric Company*,
    2021 U.S. Dist. LEXIS 13585 (N.D. Cal., Jan. 25, 2021)........................ 34, 36

*EQT Prod. Co. v. Adair*,
    764 F.3d 347 (4th Cir. 2014) .......................................................... 15

*Espinoza v. 953 Assocs. LLC*,
    280 F.R.D. 113 (S.D.N.Y. Nov. 16, 2011) ...................................... 13

*Ferreras v. Am. Airlines, Inc.*,
    946 F.3d 178 (3d Cir. 2019) .......................................................... 16

*First Penn-Pac. Life Ins. Co. v. Evans*,
    304 F.3d 345 (4th Cir. 2002) .......................................................... 7

*Gooch v. Life Inv'rs Co. of Am.*,
    672 F.3d 402 (6th Cir. 2012) .......................................................... 20

*Gunnells v. Healthplan Servs., Inc.*,
    348 F.3d 417 (4th Cir. 2003) .......................................................... 6, 21, 40

*Harp v. Starline Tours of Hollywood, Inc.*,
    2015 U.S. Dist. LEXIS 99138 (C.D. Cal. July 27, 2015)............................ 35

*Hinterberger v. Catholic Health Sys.*,
    299 F.R.D. 22 (W.D.N.Y. 2014) .................................................... 26, 30

*Hooker v. Citadel Salisbury LLC*,
    2023 U.S. Dist. LEXIS 68861(M.D.N.C. Apr. 20, 2023) ............................ 21

iv

*Iglesias—Mendoza v. La Belle Farm, Inc.*,
    239 F.R.D. 363 (S.D.N.Y. 2007) .................................................. 13

*Jackson v. Am. Elec. Warfare Assocs., Inc.*,
    2024 U.S. Dist. LEXIS 24643 (D.Md., Feb. 12, 2024) ................................ 32

*Jahagirdar et. al. v. Computer Haus NC., Inc., et. al.,*
    2021 WL 5163307 (W.D.N.C. Nov. 5, 2021) .................................. 33

*Jimenez v. Allstate Ins. Co.*,
    765 F.3d 1161 (9th Cir. 2014) .......................................... 24

*Lewis v. Alert Ambulette Serv. Corp.*,
    2012 U.S. Dist. LEXIS 6269 (E.D.N.Y. Jan. 19, 2012) ............................ 24

*Lewis v. Bloomsburg Mills, Inc.*,
    773 F.2d 561 (4th Cir. 1985) ............................................ 7

*Leyva v. Medline Indus. Inc.*,
    716 F.3d 510 (9th Cir. 2013) .......................................... 40

*M.D. ex rel. Stukenberg v. Perry*,
    675 F.3d 832 (5th Cir. 2012) .......................................... 34

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith*,
    672 F.3d 482 (7th Cir. 2012) .......................................... 13

*Millowitz v. Citigroup Global Mkts., Inc.*,
    544 F.3d 474 (2d Cir. 2008) ........................................... 6

*Morris v. Affinity Health Plan, Inc.*,
    859 F.Supp.2d 611 (S.D.N.Y. 2012) ............................................. 13

*Moyer v. Home Point Fin. Corp.*,
    2023 U.S. Dist. LEXIS 183339 (D. Md., Oct. 11, 2023) .............................. 20

*Myers v. Loomis Armored US, LLC*,
    2019 U.S. Dist. LEXIS 123884 (W.D.N.C. July 25, 2019)........................... 40

*Parsons v. Ryan*,
 754 F.3d 657 (9th Cir. 2014) ........................................................ 18

*Patel v. Facebook, Inc.*,
 932 F.3d 1264 (9th Cir. 2019) ........................................................ 6

*Ramos v. SimplexGrinnell LP*,
 796 F.Supp.2d 346 (E.D.N.Y. Jun. 21, 2011).................................. 13

*Rodger v. Electronic Data Sys. Corp.*,
 160 F.R.D. 532 (E.D.N.C., Feb. 23, 1994) ..................................... 14

*Rodriguez v. Nat'l City Bank*,
 726 F.3d 372 (3d Cir. 2013) ........................................................ 18

*Roldan v. Bland Landscaping Co.*,
 341 F.R.D. 23 (W.D.N.C., Jan. 31, 2022) ..................................... 23

*Romulus v. CVS Pharm., Inc.*,
 321 F.R.D. 464 (D. Mass. 2017)............................................... 26, 30

*Rouse v. Comcast Corp.*,
 2015 U.S. Dist. LEXIS 49347 (E.D. Pa. Apr. 14, 2015) ............... 35

*Ruiz v. Citibank, N.A.*,
 93 F.Supp.3d 279 ................................................................. 25, 30

*Scott v. Family Dollar Stores, Inc.*,
 733 F.3d 105 (4th Cir. 2013) ........................................................ 14

*Simmons v. Poe*,
 47 F.3d 1370 (4th Cir. 1995) ......................................................... 7

*Sommerville, et al. v. Bojangles' Restaurants, Inc.,
 Middle District of North Carolina, Case*,
 No. 1:17-CV-565 ......................................................................... 29

*Sullivan v. DB Invs., Inc.*,
 667 F.3d 273 (3d Cir. 2011) ........................................................ 21

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
    445 F.3d 311 (4th Cir. 2006) ........................................................... 6

*United States v. Franke*,
    1995 U.S. App. LEXIS 11307; (10th Cir. May 16, 1995).............................. 2

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)............................................................... passim

*Walton v. Johnson*,
    440 F.3d 160 (4th Cir. 2006) ......................................................... 7

*Williams v. Martorello*,
    59 F.4th 68; 2023 U.S.App. LEXIS 1768 (4th Cir., 2023)............................ 20

**FEDERAL RULES**

Federal Rules of Appellate Procedure Rule 32 ..................................... 42

Federal Rules of Civil Procedure Rule 23 ..................................... passim

# INTRODUCTION

Defendant/Appellant Bojangles' Restaurants, Inc. ("Bojangles") seeks to overturn a decision granting class certification based on a misreading of the district court's ruling and without any regard for the very limited and deferential standard of review it must overcome. Although Bojangles gives a brief nod to the "abuse of discretion" standard, it makes no effort to actually apply it to each of its three arguments, let alone do so within the confines of greater deference afforded when a district court *grants* class certification.

It is unclear which aspect of the "abuse of discretion" standard Bojangles pursues on appeal because its Appellant's Opening Brief ("AOB") vacillates between arguing errors of law and errors of fact, coming up short on both. Based on the phrasing of the Issues Presented, it initially appears Bojangles' position is that the district court erred in its *factual* findings (although it misstates the standard by omitting the word "clear" and querying only whether the district court "erred"). AOB at p. 2. The Summary of Argument section shifts gears, seemingly arguing errors of law based on a purported misapplication of the correct legal standard from *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). AOB at pp. 31-33. However, the AOB soon flips back to a factual challenge, claiming that "at bottom," Plaintiffs "failed to offer any evidence." AOB at p. 33.

In the Argument section it becomes clear why Bojangles cannot hold steady to a consistent position about the supposed flaws in the district court's written ruling – Bojangles is mostly upset about a stray comment the district court made *during the hearing* addressing a different motion. While Bojangles was arguing its own decertification motion (not the motion for class certification), the district court said, "*Wal-Mart* is dead in the Fourth Circuit." JA4177-4178 at 15:4-16:12. Bojangles now takes this singular comment, which was at best gratuitous, and at worst facetious, and attempts to use it as a basis for this Court to therefore assume the district court's *written decision* is wracked with error. But an extraneous comment made during a hearing does not nullify the district court's written decision or somehow wipe out the great deference afforded to it. Rather, if a district court makes a potentially erroneous statement, an appellate court can consider the broader context to determine whether the statement reflects a correct understanding of the law. *United States v. Franke*, 1995 U.S. App. LEXIS 11307, 1995 WL 298137, at *5-6 (10th Cir. May 16, 1995) (unpublished) (holding that when a court articulates the correct constitutional standard on hybrid representation, "it [is] clear that the judge correctly understood the governing law and did exercise discretion"). Here, the broader context, which includes the district court's fourteen-page written ruling shows the district court clearly understood the requirements of

class certification and dutifully applied it to the cache of evidence submitted by Plaintiffs and Bojangles alike.

In short, the district court's decision partially granting class certification of a North Carolina and South Carolina class is not the product of any errors of law or clear errors in factual findings. Notwithstanding Bojangles' opportunistic attempt to capitalize on a tongue-in-cheek reference made at the hearing, this Court should affirm the district court's decision.

## STATEMENT OF THE CASE

It does not take a rigorous analysis or any deep probing to see that the facts supporting Plaintiffs' claims are as ample as they are atrocious. Indeed, the avalanche of evidence spills across almost four volumes of the appellate record. And, when Bojangles' own evidence is considered (because it wholly supports certification here) then this Court is looking at almost six volumes of citations to the evidence demonstrating that common issues of fact and law exist and predominate over individualized issues. Named Plaintiffs and Opt-in Plaintiffs, who worked for Bojangles' as shift managers at various store locations across seven states, including North Carolina and South Carolina, report uncannily similar experiences of being deliberately made to work off the clock and/or having their recorded time shaved. JA628-629; JA706-719; JA759-833, JA1082-3015; JA3250-3496; JA3826-3830 (compiling all evidence cites). The practice is so widespread

and uniform that it could not possibly be a coincidence or the result of individualized circumstances; more than likely, it is a business model.

Despite its written policy to allegedly pay "crew members" for all hours worked, Bojangles does not maintain a comparable policy to pay *shift managers* for all hours worked. JA229; JA3147 at 76:10-22. And even if the crew member pay policy applies to shift managers, the volumes of evidence in the record show that Bojangles nonetheless maintained an unwritten policy to violate that written policy. In addition, despite having a policy that promised to pay employees for overtime, Bojangles policy states that overtime must be authorized and does not agree to pay for *unauthorized* overtime, as most overtime policies do. JA229. In addition, although Bojangles had a written policy requiring all time adjustments to be approved by the employee in writing (JA206, ¶10; JA229; JA3079-3182 at 48:2-51:4), Bojangles testified it chose not to enforce its own written policy (Doc. No. 341-3 (Bojangles' 30(b)(6) Deposition) at 37:3-9; 43:7-49:10; 68:2-70:25; 118:20-120:12; 128:16-136:10; 141:10-142:4) and then chose to systematically destroy all written authorizations months later, even after this case was filed. JA206, ¶10; JA3128-3150 at 35:18-45:4; 54:20-60:20;71:9-24; 89:25; 106:17-21; 115:8-14; JA3157-3168 at 13:25-21:13; 42:13-44:13; JA3175-3179 at 28:17-58:17; 32:10-32:16. Bojangles likewise destroyed electronic data related to time edits after this case was filed. Doc. No. 292-2 (Bojangles' 30(b)(6) deposition) at

4

36:8-44:3; 60:2-66:1; 154:9-20; 218:2-224:20. Further, Bojangles maintained a written policy that required shift managers to perform work before clocking in - the Opening Checklist the district court used to find at least one common question of fact or law. JA207, ¶11; JA253.

In rendering its ruling, the district court has been privy to the bevy of evidence in this matter for years, through heavy motion practice, including Bojangles' numerous discovery motions compelling individual discovery responses from more than 500 opt-ins, as well as Plaintiffs' spoliation motions against Bojangles, one of which is still pending at this time. JA3882-4002; JA4078-4099.  Unlike the cases cited by Bojangles where class certification was denied, the evidence in this case has reached, and exceeded, the "critical mass" that allows, and even demands, class treatment of Plaintiffs' claims.

Although it is tempting to correct the factual record presented in Bojangles' stream-of-consciousness Statement of the Case, Plaintiffs will not venture down into the factual weeds with Bojangles to go tit-for-tat on "facts" that are  largely irrelevant, mostly misconstrued and far too premature to even be considered at the certification stage. Such an exercise would add nothing to the legal arguments and would only result in giving this Court even more to read. Indeed, Bojangles' appeal can be resolved almost summarily, using two tools - the standard of review and a

few pairs of eyes to actually read what the district court wrote, not what Bojangles

claims it wrote and not what was said at the hearing on a different motion.

## STANDARD OF REVIEW

A district court's certification order is afforded broad discretion over

whether Rule 23's prerequisites are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S.

591, 630 (1997); *Brown v. Nucor Corp*., 785 F.3d 895, 902 (4th Cir. 2015). Abuses

of that discretion occurs only when it materially misapplies Rule 23, commits an

error of law, or clearly errs in its factual findings. *Brown, supra,* 785 F.3d at 902;

*Thorn v. Jefferson-Pilot Life Ins. Co*., 445 F.3d 311, 317–18 (4th Cir. 2006); see

also *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003). This is

a "very limited" review, to be reversed only upon a strong showing that the district

court's decision was a *clear* abuse of discretion. *Brown, supra,* 785 F.3d at 928

(4th Cir. 2015). Furthermore, reviewing courts give the district court "noticeably

more deference when reviewing a *grant* of class certification than when reviewing

a denial." *Millowitz v. Citigroup Global Mkts., Inc*., 544 F.3d 474, 480 (2d Cir.

2008); *Patel v. Facebook, Inc.,* 932 F.3d 1264, 1275 (9th Cir. 2019).

In general, a district court's factual findings are "presumptively correct."

*Crowe v. Cherokee Wonderland, Inc.*, 379 F.2d 51, 53 (4th Cir. 1967). As such, in

reviewing factual findings by the trial court, this Court should "view the evidence

most favorable to the finding" in determining whether the trial court's factual

6

findings should be set aside. *American Football League v. National Football League*, 323 F.2d 124, 134 (4th Cir. 1963). A court of appeals is not to "substitute [its] version of the facts for that found by the district court." *Walton v. Johnson*, 440 F.3d 160, 173 (4th Cir. 2006). Such findings "are conclusive on appeal unless they are plainly wrong." *Id*. at 173. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573–74 (1985). In other words, viewed in the light most favorable to the district court's finding, if "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574; *see also*, See *First Penn-Pac. Life Ins. Co. v. Evans*, 304 F.3d 345, 348 (4th Cir. 2002). Under this standard, appellate courts should affirm a certification decision even if it is convinced that "reasons clearly existed for taking the other course." *Lewis v. Bloomsburg Mills, Inc*., 773 F.2d 561, 564 (4th Cir. 1985); *accord Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995).

## SUMMARY OF ARGUMENT

Bojangles' entire appeal is based on a fictional account of the district court purportedly failing to follow *Wal-Mart.* However, even a cursory review of the district court's well-reasoned ruling reveals that it followed Rule 23 to the letter

and gave due regard to *Wal-Mart,* where warranted. Bojangles has not successfully shown a single error of law; its appeal is mostly made up of assertions that are completely contradicted by the ruling itself.

For instance, the district court correctly identified all the Rule 23 factors it was required to analyze and then correctly and thoroughly applied the facts to that stated law. JA4101-4111. The Court even underlined the words "all four" when it took up the analysis of Rule 23(a). JA4102. Clearly, the district court understood the law and the task at hand. The district court methodically and rigorously analyzed each requirement of Rule 23(a) and 23(b), citing appropriate and supporting case law along the way, including *Wal-Mart*. Despite the district court's demonstrated mastery of the applicable law, Bojangles nonetheless contends the district court committed legal error by failing to follow *Wal-Mart* in ruling in Plaintiffs' favor on the commonality and predominance requirements.

However, Bojangles' entire commonality argument is a farce. Bojangles claims the district court applied a pleading standard in contravention of *Wal-Mart* when it based commonality on the Opening Checklist even though: 1) the district court *cited to evidence* in support of its finding; 2) the operative pleading does not even allege off-the-clock work based on the Opening Checklist so the district court could only have considered the evidence; and 3) the Opening Checklist is itself evidence the district court analyzed and it shows off-the-clock work is required by

Bojangles. Bojangles' Opening Checklist is the perfect example of a common question because, on its face, it requires shift managers to perform tasks off the clock. Bojangles' only rebuttal witness confirms that the Opening Checklist applies uniformly across all store locations. The declarations and deposition testimony corroborate the impact of the Opening Checklist's instruction to perform tasks off the clock. The Opening Checklists make all shift managers s*ubject to the same injurious conduct* by Bojangles, which is enough for commonality. The remainder of Bojangles' arguments are merits and/or damages arguments that are not appropriate at the class certification stage.

Bojangles' second argument is likewise borne of a blatant mischaracterization of the district court's ruling. Bojangles takes the district court to task for stating that, "class members are 'unified by a common theory of being worked off the clock.'" AOB at p. 46, citing JA4107. However, this statement is made in the district court's analysis of *typicality*, not in its commonality analysis. Again, Bojangles' entire argument is based on its own mistaken reading of the district court's ruling. Furthermore, *Wal-Mart* also recognized that, a common injury can suffice for commonality. *Wal-Mart, supra* at 350. The issue in *Wal-Mart* was that Title VII can be violated in many ways, so simply alleging a violation of that statute is not enough. Whereas, wage statutes are typically violated in one way - failure to pay as promised and as required under the law.

Bojangles' third argument on predominance is also based on a misreading and/or mischaracterization of the district court's ruling. Bojangles argues the district court failed to conduct any predominance analysis whatsoever. Again, a plain reading of the ruling shows that Bojangles misrepresents the extent of the district court's analysis when it claims it contained only two sentences. AOB at 53. This is simply not true.

Bojangles' argument on appeal is also self-limiting. Since it argues the district court failed to conduct the required analysis, the only remedy is a remand with instructions to perform a more thorough analysis. This Court cannot decide the predominance issue in the first instance. In any event, not only did the district court, in fact, conduct a predominance analysis, its conclusions were based on the applicable law and supported by the abundant factual record.

## ARGUMENT

### A.    Preliminary discussion about *Wal-Mart*.

Although *Wal-Mart* may be alive and kicking in the Fourth Circuit, it is not the solution to all of Bojangles' problems. As an initial matter, *Wal-Mart* did not introduce the concept of "rigorous analysis" at the class certification stage, as Bojangles seems to suggest. "Rigorous analysis" -- an examination of facts supporting class certification -- is not new. See *Gen. Tele. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982) ("[W]e reiterate today that a Title VII class action, like

any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."). The reason the Supreme Court took up *Wal-Mart* and clarified the existing law was because many circuit courts were not following *Falcon* in practice and were still rubber-stamping plaintiff's pleading allegations.

Furthermore, *Wal-Mart* was not the last word by the Supreme Court regarding class certification. Two years later, the Supreme Court affirmed the certification of a class of plaintiffs who were alleging security fraud in *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455 (2013). In that case, the Supreme Court held that the plaintiffs need not prove the materiality element of the plaintiff's security fraud claim at the Rule 23(b)(3) class certification stage; instead, the plaintiffs needed only to demonstrate that common questions would predominate. *Id.* at 459 ("Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."). The Supreme Court went on to state that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage" and a Rule 23 certification ruling is "not to adjudicate the case." *Id.* at 466. Instead, the merits of a claim may be considered only when "relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

Furthermore, while it is true that, from a legal standpoint, *Wal-Mart* is not "dead in the Fourth Circuit" because a "rigorous analysis" is required (just as it was before *Wal-Mart*), from a factual standpoint, *Wal-Mart* does not even get born into the certification analysis here. In stark contrast to the nuanced, individualized, fact-intensive employment decisions based on managerial discretion that were challenged in *Wal-Mart*, this case involves: a non-discretionary written policy requiring off-the-clock work; admitted violations of a written policy requiring written employee authorizations of all time adjustments (plus spoliation of any such written authorizations); a written pay policy that does not apply to shift managers; and an unwritten policy to violate that written to the extent it does apply to shift managers. Critically, none of these issues involve the type of managerial discretion at issue in *Wal-Mart*. The claims in *Wal-Mart* were based on the countless *subjective* decisions made by Wal-Mart's low-level supervisors regarding compensation and promotions and the Supreme Court found that "they ha[d] little in common but their sex and this lawsuit." *Id.* at 652. Importantly, Bojangles does not even argue or attempt to argue that any policy violations in this case were due to "rogue" managers exercising discretion.

Factually, *Wal-Mart* is just not as impactful, and even distinguishable, in cases that do not involve discretionary policies. After *Wal-Mart*, courts have routinely found commonality in off-the-clock cases alleging comparable facts. *See,*

*e.g. Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 129 (S.D.N.Y. Nov. 16, 2011) (finding *Wal-Mart* "distinguishable" from a wage and hour and overtime case brought pursuant to Rule 23); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith*, 672 F.3d 482, 490 (7th Cir. 2012) (challenging company-wide policies in a class action is not forbidden by the *Wal-Mart* decision); *Morris v. Affinity Health Plan, Inc.*, 859 F.Supp.2d 611, 616 (S.D.N.Y. 2012) ("[t]he weight of authority rejects the argument that *Dukes* bars certification in wage and hour cases."); *Ramos v. SimplexGrinnell LP*, 796 F.Supp.2d 346, 356 (E.D.N.Y. Jun. 21, 2011) (noting that [*Wal-Mart*] had "little bearing" where plaintiffs had adduced significant proof that defendant routinely failed to pay proper wages and that "numerous courts have found that wage claims are especially suited to class litigation—perhaps the most perfect questions for class treatment—despite differences in hours worked, wages paid, and wages due"); *Iglesias—Mendoza v. La Belle Farm, Inc*., 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (finding wage claims are especially suited to class litigation—perhaps "the most perfect questions for class treatment—despite differences in hours worked, wages paid, and wages due.")

In short, *Wal-Mart* is applicable to this case for one reason only - the district court was required to perform a "rigorous analysis" and not rely solely on Plaintiffs' pleadings. As will be shown below, the district court understood the assignment and executed it competently, exercising its discretion in a way that

fully complied with the law and was based on the overwhelming evidence before it.

**B.    Bojangles has failed to show the district court abused its discretion in finding the Opening Checklist meets the commonality prerequisite.**

**1.    The district court did not fail to conduct a rigorous analysis of the evidence nor did it apply an incorrect standard of review.**

The district court began its analysis of commonality by setting out the applicable law, citing *Scott v. Family Dollar Stores, Inc.*,[1] 733 F.3d 105 (4th Cir. 2013) (which the district court had decided), as well as *Wal-Mart*. JA4105. In fact, the district court twice quoted *Wal-Mart* on the very issue Bojangles says the district court ignored. To wit, it stated that "Rule 23(a)(2) 'does not set forth a mere pleading standard.' [*Wal-Mart*], 564 U.S. at 350. Instead, Plaintiffs must prove that there are '<u>in fact</u> sufficiently . . . common questions of law or fact.' *Id*." JA4105 (emphasis in original). As such, the district court showed it was fully aware of the standard of review and understood the task at hand. The district court also understood that it needed to only find one common question of law or fact. This rule of law is recognized in *Wal-Mart* – "for purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Wal-Mart, supra*, 564 U.S. at 359. It is not necessary that all of the questions of law or fact in a case be common to all putative class members. *Rodger v. Electronic Data Sys. Corp.*, 160 F.R.D. 532,

---

[1] Notably, the *Scott* case was before the same District Court as here.

537 (E.D.N.C., Feb. 23, 1994); *Central Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C.), *aff'd* 6 F.3d 177 (4th Cir. 1993). Even a single common question will suffice for commonality if it is "of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014).

The district court presumably chose the Opening Checklist as the single common question because it represents a situation where Bojangles' own policy, on its face, requires off the clock work. Although Bojangles also worked class members off the clock in numerous other ways, the Opening Checklist is based on a written policy that *on its face actually required* off the clock work, although it had many other common questions of fact and law to choose from.

Bojangles specifically takes issue with the district court's use of the word "allege" in the following sentence: "Plaintiffs allege that they were required to complete certain tasks before clocking in pursuant to Bojangles' "'Opening Checklist.'" JA4106. From there, Bojangles reaches the erroneous conclusion that the district court used a "pleading standard" in contravention of *Wal-Mart*. In fact, Bojangles goes so far as to mislead this Court by arguing that "[t]he district court did not and could not point to any evidence offered by any party that supported Plaintiffs' allegation." AOB at 38. This representation is alarming, considering the district court specifically cited the supporting evidence – Plaintiffs' declarations in

15

Doc. No. 386 (Appendix Doc. No. 388). JA4106. This is Plaintiffs' Memorandum of Law in Support of their Motion to Certify, which in turn cites thirteen declarations and a deposition transcript. Doc. No. 386, p. 2. This should have been enough to inform Bojangles that the district court was most certainly *not* applying a pleading standard in contravention of *Wal-Mart*, but instead was relying on evidence submitted by Plaintiffs.

Moreover, the Opening Checklist itself is a piece of evidence that creates a common question on its face, even without the supporting declarations. When the evidence is so blatantly and overwhelmingly supportive of a common question, it does not take much rigor to reach the right conclusion. Ironically, the Second Amended Complaint ("SAC") does not even allege any facts specifically referencing the Opening Checklist. JA107-148. The Opening Checklist was produced by Bojangles later during discovery. Obviously, the district court could not have relied on allegations in a pleading that simply are not there. And it certainly could not have placed "blind reliance" on non-existence allegations. As such, the district court did not violate *Wal-Mart*'s requirement that the court rigorously analyze the evidence, and it did not improperly lower the bar for class certification to that of a mere pleading standard.

The main case Bojangles relies on, *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 184 (3d Cir. 2019), does not support its position. In *Ferreras*, the district court

16

explicitly referred to Rule 23(b)'s requirements as "pleading requirements" and said plaintiffs had met those requirements by setting forth "allegations and initial evidence." *Id.* at 184. As explained above, the district court in this case did the exact opposite. It expressly acknowledged that Rule 23(a)(2) "does not set forth a mere pleading standard" and it stated that that there are "<u>in fact</u> sufficiently . . . common questions of law or fact." JA4106 (emphasis in original)

Accordingly, the district court did not commit any error of law.

**2.     The district court did not misapply *Wal-Mart*'s definition of a "common question."**

Bojangles next argues the district court operated under a "fundamental misunderstanding" of the Supreme Court's definition of commonality. In attempting to show this error of law, Bojangles does nothing more than attack the district court's factual findings, giving them absolutely no deference and certainly not showing the factual findings were "clearly erroneous." However, the district court's conclusion is completely in line with *Wal-Mart*. The Supreme Court in *Wal-Mart* stated that demonstrating commonality requires proof that all class members "have suffered the same injury." *Id.* at 350 (internal quotation marks omitted). The Court explained that this means that the "claim must depend upon a common contention." *Id.* That "common contention" must be "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one

17

stroke." *Id.*  In illustrating this test, the Supreme Court gave two examples that would have satisfied the "same injury" requirement in *Wal-Mart*: "the assertion of discriminatory bias on the part of the same supervisor" and "a companywide discriminatory pay and promotion policy." *Id.* at 350, 359. The Opening Checklist is exactly like the Supreme Court's second example – a company wide policy that requires off-the-clock work. The district court did not misapply *Wal-Mart*'s definition of commonality.

Furthermore, the two examples offered by the Supreme Court in *Wal-Mart* describe injurious conduct by the defendant, not the type or extent of damages suffered by class members. Consequently, the Supreme Court's examples clarify that to suffer "the same injury," class members need not necessarily have experienced the same damages. See, *Brown, supra*, 785 F.3d 895 at 919; *In re Deepwater Horizon*, 739 F.3d 790, 810-11 (5th Cir. 2014) ("the same injury" test "can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse."); *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) (the "same injury" requirement from *Wal-Mart* is satisfied when all class members were subject to the same injurious conduct by the defendant); *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 383 (3d Cir. 2013) ("the focus of the commonality inquiry is not on the strength of each plaintiff's claim, but

18

instead is on whether the defendant's conduct was common as to all of the class members." (citation and internal quotations omitted).

Despite this clear guidance, Bojangles ventures into a full-blown merits/damages argument, claiming that only one out of 30 deposition transcripts mention any form of checklist as the cause of off-the-clock work. AOB at 39. However, the absence of the word "checklist" in Plaintiffs' deposition transcripts is not dispositive. It does not change the fact that all putative class members were *subject to the same injurious conduct* based on a policy that required off the clock work on its face. Many of the supporting declarations specifically reference performing tasks under step one on the Opening Checklist - circling the parking lot for security and noting anything out of place or unusual. See, e.g., JA1127, ¶3; JA1165, ¶4; JA1182, ¶4; JA1194, ¶4; JA1203-1204, ¶4; JA1212, ¶4; JA1216, ¶4; JA1230, ¶3; JA1235, ¶3; JA1240, ¶4; JA1248, ¶3; JA1266, ¶6; JA1312, ¶4; JA1322, ¶5; JA1327, ¶4; JA1340, ¶3; JA1365, ¶5; JA1376, ¶5. Since Bojangles' incorrect and demonstrably false mantra in this case is that the declarations are "attorney generated," it should be noted that deposition testimony also supports tasks done off the clock under step one of the Opening Checklist. See e.g., JA507, 35:9-10; JA509, 52:3-9; JA517-51718, 34:25-35:4; JA557, 39:6-25; JA1790, 29:14-16; JA1904, 37:20-25: JA2694-2695, 78:12-79:5

Bojangles next claims that some shift managers never once performed pre-shift work off the clock, citing its expert report at JA625-626. AOB at 42. However, Bojangles made a similar argument to the district court, specifically arguing that only 20% of opt-in shift managers performed pre-shift work off the clock but the district court called out this implied admission, rightfully taking it to mean that Bojangles "apparently admits that 80% of the shift managers do claim to have performed pre-shift work off the clock in violation of federal and state law." JA4106.

In any event, these are all variations of Bojangles' challenges to the merits and/or damages which are premature at the certification stage. See, *Williams v. Martorello* 59 F.4th 68, 2023 U.S.App. LEXIS 1768, *48 (4th Cir., 2023) (unpublished) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.") (quoting *Amgen Inc.*, 568 U.S. at 466); *Moyer v. Home Point Fin. Corp*., 2023 U.S. Dist. LEXIS 183339, *10 (D. Md., Oct. 11, 2023) ("the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits.") (citation omitted); *Gooch v. Life Inv'rs Co. of Am*., 672 F.3d 402, 432 (6th Cir. 2012) ("the relative merits of the underlying dispute are to have no impact upon the determination of the propriety of the class action."). Yet requiring the plaintiffs to prove that the conduct complained of *in fact* caused the class harm would do just that. Because Plaintiffs would be required

to prove most, if not all, of the essential elements of their claims at the certification stage, there would be little left for the merits stage. See *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 306 (3d Cir. 2011) ("the Rules and our case law have consistently made clear that plaintiffs need not actually establish the validity of claims at the class certification stage."); *accord* Fed. R. Civ. P. 23 advisory committee's notes (2003) ("an evaluation of the probable outcome on the merits is not properly part of the certification decision[.]").

Overall, the commonality requirement does not necessarily "require that all the questions of law and fact raised by the dispute be common, just that any dissimilarities between the claims do not impede a common resolution." *Hooker v. Citadel Salisbury LLC*, 2023 U.S. Dist. LEXIS 68861, 2023 WL 3020967, at *4 (M.D.N.C. Apr. 20, 2023) (unpublished) (quotations omitted). "The commonality test is qualitative." *Id.* "Quantitatively, almost by definition there will always be more individual . . . issues than common liability issues." *Gunnells, supra,* 348 at 429. "Qualitatively, however, liability issues may far exceed in complexity the more mundane individual damages issues." *Id.* (cleaned up). As such, Plaintiffs need only prove the existence of common practices that give rise to common questions capable of generating common answers, and need not prove that those practices, in fact, drive the class harm. Bojangles' entire Statement of the Case and argument on commonality is merely a "dress rehearsal" for the trial on the merits

and emphasizes the quantity of minor factual differences over the qualitative force of the common issues of law and fact.

Lastly, in desperation, Bojangles argues that Plaintiffs failed to present any evidence of the extent to which the Opening Checklist was disseminated across the company or followed at individual restaurants. However, Plaintiffs did not need to put on this evidence because Bojangles did it for them. The declaration of Christine Bowers, Bojangles' former Regional Director of Operations, actually *relies on* the Opening Checklist and even attaches a copy of it as evidence of how Bojangles operates all stores. She states, "Bojangles reminds shift managers in written materials that they should be clocked in while working. For example, Bojangles' opening checklist, which is attached hereto as Exhibit 2, instructs shift managers who open the restaurant to clock in immediately after parking their car, entering the building, and disarming the restaurant's alarm." JA207 at ¶11. As such, the Opening Checklist is clearly used in all stores. In addition, the plain language of the Opening Checklist also proves that Bowers is not being truthful in her declaration because the Opening Checklist most certainly does not instruct employees to clock in "immediately after parking their car." JA253.

The Opening Checklist undeniably gives putative class members several tasks to do off the clock before clocking in and creates a common issue of law and

fact. The district court's factual findings on this issue are presumptively correct and are entirely plausible in light of the record. There is no basis for reversal.

**C.    Bojangles has failed to show that the district court abused its discretion related to other off-the-clock work.**

> **1.    Bojangles erroneously challenges a statement made in the district court's analysis of typicality.**

Bojangles argues that the district court erred in concluding that class members are "unified by a common theory of being worked off the clock, regardless of the specific uncompensated activities they were required to perform." According to Bojangles, "the view that commonality is satisfied when all putative class members assert the same claim (such as a claim to compensation for time worked) is directly contrary to *Wal-Mart*." AOB at 46. Incredibly, the quoted part of the ruling Bojangles attacks is found in the district court's discussion on *typicality*, not commonality. As the district court noted, a representative party's claims and defense are typical if prosecution thereof will "simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp*., 436 F.3d 461, 466 (4th Cir. 2006). Typicality requires that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.*; see also, *Roldan v. Bland Landscaping Co*. 341 F.R.D. 23, 33 (W.D.N.C., Jan. 31, 2022). In *Wal-Mart*, the Supreme Court did not reach the typicality issue since it ruled against plaintiffs on the commonality issue. *Wal-*

*Mart, supra*, 564 U.S. at 349, fn. 5. As such, Bojangles' entire argument regarding Plaintiffs' claims of being worked off the clock in other ways is entirely misplaced, both factually and legally. This Court should completely disregard it. Bojangles cannot show the district court abused its discretion either in its factual findings or its application of the law when it improperly attacks, and even totally misrepresents, the district court's written words.

**2.    Plaintiffs' "policy to violate the policy" claim nonetheless meets the requirements for commonality.**

Although the issue of Plaintiffs' other off-the-clock claims is not properly before this Court since Bojangles misrepresented the district court's ruling, Plaintiffs have nonetheless met their burden of identifying common issues of law and fact regarding all the other off-the-clock work that are capable of classwide resolution.

*Wal-Mart* notwithstanding, commonality is satisfied where the lawsuit challenges a systemwide practice or policy that affects all of the putative class members. See, *Lewis v. Alert Ambulette Serv. Corp.*, 2012 U.S. Dist. LEXIS 6269, 2012 WL 170049, at *10 (E.D.N.Y. Jan. 19, 2012) (commonality requirement satisfied where all potential class members were alleged to have been harmed by common practice of defendants' failure to adequately pay for overtime hours and legal theory set forth in complaint was common to all class members); *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1166 (9th Cir. 2014) (holding that "[p]roving at

24

trial whether such informal or unofficial policies existed will drive the resolution of the elements of the plaintiffs' off-the-clock claims, which depended on an alleged 'unofficial policy of discouraging reporting of . . . overtime"); s*ee also, Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 378 (7th Cir. 2015) (finding question of whether defendant had unofficial policy or practice requiring employees class-wide to work off-the-clock overtime hours was capable of classwide resolution because if the answer to the question was "no," then class members were left with nothing in common and each would have to prove his or her claim individually.)

In *Bell*, a key aspect of the ruling turned on the fact that the plaintiffs presented "plentiful evidence" of an "unofficial policy or practice" requiring employees to work off the clock. The district rejected the defendants' arguments that individualized shift lengths, changing responsibilities, and the speed at which any one server performed his duties preclude certification and found that the plaintiffs' case actually got stronger with discovery. Such is the case here – Plaintiffs' case only got stronger with discovery because it provided the "plentiful evidence" of Bojangles' unofficial policy or practice requiring shift managers to work off the clock.

One of the cases cited by Bojangles – *Ruiz v. Citibank, N.A.*, 93 F.Supp.3d 279 – contains an explanation of the proper analysis of commonality in wage and

hour cases that supports the district court's decision. In *Ruiz*, the district court

explained:

> As a practical matter, employee-plaintiffs can rarely point to an
> explicit policy of their employer that is violative of their rights,
> including their rights under the relevant wage and hour laws. Courts
> have recognized this fact, and proof of de facto policies has therefore
> become the coin of the realm. To prove such policies, plaintiffs could
> present evidence of the implementation or recognition of these *sub
> silentio* policies at the senior management level, but such smoking
> guns are also quite rare. In the alternative, plaintiffs must present
> enough evidence to confidently suggest a uniform, or nearly uniform,
> practice occurring across branch offices. Perhaps even before *Dukes*,
> but certainly after that decision, this evidence entails either (i)
> comprehensive statistical analyses *or* (ii) **anecdotal evidence that
> reaches a certain critical mass.**

*Ruiz, supra*, at 289 (emphasis added). The other two cases cited by Bojangles also

make it clear that plaintiffs can succeed in certifying an off-the-clock class where

there is "significant proof" of a de facto policy to deny payment for such work."

(*Hinterberger v. Catholic Health Sys.*, 299 F.R.D. 22, 49 (W.D.N.Y. 2014)) and

where the anecdotal evidence is not too weak to raise an inference of a common

practice. *Romulus v. CVS Pharm., Inc.*, 321 F.R.D. 464, 469-70 (D. Mass. 2017).

Even *Wal-Mart* recognized that "[s]ignificant proof that an employer operated

under a general policy of discrimination conceivably could justify a class of both

26

applicants and employees if the discrimination manifested itself in hiring and

promotion practices in the same general fashion, such as through entirely

subjective decisionmaking processes." *Wal-Mart, supra*, 564 U.S. at 352.

Here, there is significant proof on all aspects of Plaintiffs' claims. For

instance, on the issue of overtime alone, Plaintiffs have amassed the following

evidence. Nearly all Plaintiffs were told that overtime was "not allowed" or they

could "only get" 40 hours a week even though Bojangles required them to work

longer. JA1087, ¶10; JA1092, ¶12; JA1098, ¶14; JA1103-1104, ¶11; JA1113, ¶11;

JA1118-1119, ¶¶14-17; JA1123-1124, ¶12; JA1133-1134, ¶13; JA1138, ¶¶ 6, 13;

JA1142, ¶12; JA1147-1148, ¶¶16, 23; JA1151-1153, ¶¶ 3, 5-6, 12-14, 19; JA1161,

¶12; JA1170-1171, ¶¶11-13; JA1175, ¶¶9-10; JA1179, ¶11; JA1187, ¶12;

JA1217-1218, ¶¶ 6, 10-12; JA1222, ¶12; JA1231, ¶9; JA1236, ¶9; JA1241, ¶11;

JA1244-1245, ¶5; JA1249, ¶¶9-10; JA1254, ¶10; JA1258, ¶10; JA1262, ¶12;

JA1266, ¶8; JA1271-1272, ¶¶11-13; JA1275-1276, ¶¶ 4, 6, 9; JA1280, ¶10;

JA1284, ¶9; JA1294, ¶10; JA1304, ¶14; JA1307-1308, ¶¶4, 6-7; JA1313-1314,

¶¶13-14; JA1322, ¶4; JA1328, ¶¶9-13; JA1333, ¶11; JA1337, ¶¶6, 8; JA1341, ¶11;

JA1346-1347, ¶¶15-16; JA1351, ¶9; JA1356, ¶¶6-8; JA1360-1361, ¶¶4-5, 8-9;

JA1364-1365, ¶¶4, 17; JA1371, ¶14-17; JA1386-1387, ¶¶10-15, 18; JA1391-1393,

¶¶4, 13; See also, compilation of cites at JA3826-3830, column No. 2. Many

Plaintiffs were specifically told by managers that their time was cut because they

had worked overtime. JA1098, ¶14; JA1113, ¶11; JA1119, ¶¶15-16; JA1151-1153,

¶¶ 3, 5-6, 12-14, 19; JA1161, ¶12; JA1170-1171, ¶¶11-13; JA1175, ¶¶9-10;

JA1187, ¶12; JA1194-1195, ¶¶5, 7; JA1217-1218, ¶¶ 6, 10-12; JA1275-1276, ¶¶ 4,

6, 9; JA1294, ¶10; JA1304, ¶14; JA1307-1308, ¶¶4, 6-7; JA1341, ¶11; See also,

compilation of cites at JA3826-3830, column No. 3. Some Plaintiffs even

physically watched their time being cut, as well as the time of other shift managers.

JA1170-1171, ¶¶11-13; JA1199-1200, ¶11; JA1217-1218, ¶¶ 6, 10-12; See also,

compilation of cites at JA3826-3830, column No. 3. Many Plaintiffs complained to

store managers, area directors, regional directors and/or HR corporate about

working off the clock and/or having their time shaved, all to no avail. JA3826-

3830, column No. 4.[2] Everyone who complained was given the same battery of

excuses. JA3826-3830, column No. 4. Across the board, nothing was ever done to

correct the situation and pay these Plaintiffs what they are owed. JA3826-3830,

column No. 4. Yet, Bojangles' expert essentially found that, across all shift

managers from 2017 - 2021, 74.6% of the workweeks showed *no overtime*. JA630.

According to its own expert, of the 401 Plaintiffs who answered interrogatories,

76% were required to engage in training activities off the clock, 67% were required

to make bank deposits off the clock, and 54% were required to attend mandatory

---

[2] The sheer volume of available citations to evidence in this case do not make for easy
readability. As such, Plaintiffs refer the Court to the compilation of cites submitted to the district
court, which include references to the underlying evidence.

meetings off the clock. JA628-629. Overall, though, 99% of those who responded to interrogatories reported being required to work off the clock. JA707

In fact, this is not even the first shift manager case to make these claims and Bojangles did nothing to correct the issues after it settled the first case, *Sommerville, et al. v. Bojangles' Restaurants, Inc*., Middle District of North Carolina, Case No. 1:17-CV-565. JA3538. Indeed, when the instant case was filed, Bojangles' Director of HR, Jeanine Eubanks, claimed she had no knowledge of any prior complaints. Doc. No. 16-1, ¶10. She filed a nearly identical declaration in the *Sommerville* case a few years before so obviously she had knowledge. Doc. No. 386, pp. 10-11. Eubanks' dueling declarations corroborate Plaintiffs' argument that Bojangles' had a policy to violate its own written policy because they show that, even after Bojangles had express notice and knowledge of the *Sommerville* allegations, which included identifying the exact ways they were being worked off the clock, Bojangles *did nothing* to correct this situation. Why? Because it maintained, at the corporate level, an unwritten policy to violate its written policies.

Overall, the 400 hundred interrogatory responses, 67 declarations and ample deposition testimony, all describing the same experiences while working for Bojangles across hundreds of stores in multiple different states, certainly provide a degree of anecdotal evidence that reached the requisite "critical mass" noted in

*Ruiz, supra*. It also constitutes the "significant proof" needed under *Hinterberge*r and *Wal-Mart* that Bojangles operated under a general policy of working shift managers off the clock and thus justifies class treatment. Unlike *Romulus*, Plaintiffs' anecdotal evidence is not "too weak" to raise an inference of a common practice.

Furthermore, Bojangles' only rebuttal to Plaintiffs' "critical mass" of evidence was a single declaration from a mid-level manager with minimal operations experience, insisting that none of it ever happened, nor could it ever happen at any Bojangles location. JA204-213, ¶¶ 7-34. However, Bojangles' chosen defense in this case - that none of this ever happened and Plaintiffs are not telling the truth - effectively establishes commonality because determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. Either it happened the way Plaintiffs claim or none of it ever happened as Bojangles claims. Plaintiffs all rise and fall together on the answer to a single question – did Bojangles maintain an unwritten policy to work shift managers off the clock? If the jury believes Bowers, then the answer to the question will be in the negative and no claims will survive, cut down in a single stroke.

Contrary to Bojangles' insistence, this case does not present a situation like the one in *Wal-Mart* where individual managers exercised discretion as to the

30

discriminatory decisions. Although Bojangles belatedly tries to argue that there are manager-by-manager disparities in this case, that is not how Bojangles opted to defend this case. The "glue" in *Wal-Mart* relates to the *reasons* that each plaintiff was not chosen for promotion. *Wal-Mart*, *supra* at 352 ("Without some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." (emphasis added)). Here, however, the evidence in the record shows that the reason shift managers were worked off the clock is uniform - to reduce costs by avoiding paying for all hours worked, particularly overtime hours. Further, unlike in *Wal-Mart*, Bojangles does not cite any evidence in the record to support its claim that "individual supervisors are given discretion over employment decisions." *Id.* at 354. Instead, Bowers' declaration essentially declares that all managers acted uniformly.

Lastly, with no legal leg to stand on, Bojangles again resorts to a merits/damages argument, citing to specific testimony, usually in response to loaded leading questions more intended to avoid obtaining information about Plaintiffs' off the clock experiences. It is premature to delve into the merits at this stage or to consider arguments about who will ultimately recover damages and who will not. The district court was not persuaded by such arguments and its factual findings are plausible in light of the record in its entirety.

Accordingly the district court committed no legal error nor made any clearly erroneous factual findings.

**D.    Bojangles has failed to show that the district court abused its discretion in finding that Plaintiffs met the predominance prerequisite.**

**1.    The district court did, in fact, conduct a predominance analysis.**

Bojangles argues that the district court certified the North Carolina and South Carolina classes without conducting a predominance analysis. Not so. The district court's analysis tracked the language of Rule 23(b)(3), as it must. Although Bojangles chooses to ignore the statutory language, Rule 23(b)(3) provides that, in ruling on predominance and superiority, the court considers: "a) the class members' interests in individually controlling the prosecution or defense of separate actions; b) the extent and nature of any litigation concerning the controversy already begun by or against class members; c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; d) the likely difficulties in managing a class action." The district court dutifully and thoroughly addressed each of these factors in turn, in addition to finding that individual claims and defenses did not predominate under the facts here. JA4111. Although Bojangles may not recognize it, this is the proper way to analyze the requirements of Rule 23(b). See, e.g. *Jackson v. Am. Elec. Warfare Assocs., In*c.,

2024 U.S. Dist. LEXIS 24643, *16 (D.Md., Feb. 12, 2024). There was no error of law.

The district court's predominance analysis continues for three pages, yet Bojangles misleadingly claims it "consisted of just two sentences." AOB at 53. Indeed, prior to the statement quoted by Bojangles, the district court explained the requisite balancing it conducted under *Jahagirdar et. al. v. Computer Haus NC., Inc.*, *et. al.* No. 1:20-cv-33-MOC, 2021 WL 5163307 (W.D.N.C. Nov. 5, 2021): "In *Jahagirdar*, this Court found that 'the claims and defenses of class members relating to Defendants' wage and hour practices' predominated over individual differences where those differences 'originated from the same alleged policies and practices, and the questions of whether such policies and practices in fact existed, were in fact unlawful, and did in fact harm Plaintiffs.' *Id*. at *9. Such is the case here." JA4111. As such, the district court did not conflate commonality with predominance or blend the two analyses, as Bojangles accuses. The face of the ruling clearly shows two entirely separate analyses of commonality and predominance.

**2.    Common questions, in fact, predominate over individualized questions.**

Although Bojangles takes the position that there has been no predominance analysis in this case, it then goes on to argue hypothetically that, if the district court had conducted a predominance analysis, it could only have concluded that

individualized issues predominate over common ones. AOB at 54. It appears
Bojangles is asking this Court to decide predominance in the first instance, which
is improper. See *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832 (5th Cir. 2012)
(remanding class certification issue to allow the district court to conduct rigorous
analysis). As such, even if Bojangles is correct, the most this Court can do if it
agrees with Bojangles is remand for a more thorough predominance analysis. To
be thorough, Plaintiffs will nonetheless address Bojangles' hypothetical
predominance argument.

Generally, when a plaintiff challenges his employer's policy concerning
overtime pay "the validity of that policy predominates over individual issues and
class certification is appropriate." *Berber v. Hutchison Tree Serv.*, 2018 U.S. Dist.
LEXIS 137038, *29 (E.D.N.C., Aug. 14, 2018). Indeed, "[c]laims alleging that a
uniform unofficial policy consistently applied to a group of employees is in
violation of the wage and hour laws are of the sort routinely, and properly, found
suitable for class treatment." *Durham v. Sachs Electric Company*, 2021 U.S. Dist.
LEXIS 13585, 2021 WL 242874, at *6 (N.D. Cal., Jan. 25, 2021) [citation
omitted]. This includes "policy-to-violate-the-policy" theories of liability, where a
defendant's official policy is facially compliant with the relevant labor law, but the
defendant implements unofficial policies undermining this compliance. *Id.,* citing
*Campbell v. Vitran Express Inc*., 2015 U.S. Dist. LEXIS 155512, 2015 WL

34

7176110, at *4, *6 (C.D. Cal. 2015) (finding that declarations from 15 out of 156 employees at four different work sites was sufficient evidence of the existence of a uniform, unofficial policy depriving class members of meal and rest breaks); *Rouse v. Comcast Corp*., 2015 U.S. Dist. LEXIS 49347, at *11-12 (E.D. Pa. Apr. 14, 2015) (finding that common issues predominated on off-the-clock claim where plaintiffs alleged a common policy or practice of Defendant for failing to pay for off-the-clock time); *Antemate v. Estenson Logistics, LLC*, 2015 U.S. Dist. LEXIS 83543, 2015 WL 3822267, at *5 (C.D. Cal. June 15, 2015) (finding that common issues predominate where plaintiffs offered evidence that "proposed class members . . . all appear equally subject to . . . alleged policies and practices, regardless of the particular facility where they work"); *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 638 (S.D. Cal. 2010) (finding that common issues predominate where "[t]he majority of Plaintiff's evidence [was] anecdotal, consisting of the declarations of [employees]" and one supervisor stating that "dispatchers did not schedule lunches"); *Harp v. Starline Tours of Hollywood, Inc.*, 2015 U.S. Dist. LEXIS 99138, 2015 WL 4589736, at *6 (C.D. Cal. July 27, 2015) (finding that common issues predominate where plaintiffs offered three declarations from employees testifying that they "were often prevented from taking lunch breaks, but that such breaks were nonetheless automatically deducted from their reported hours").

In *Durham, supra*, the district court recognized that class certification is not always appropriate where a plaintiff alleges an unofficial policy to violate wage-and-hour laws. As *Durham* recognized, "[t]he distinguishing factor in this determination 'appears to be the amount of evidence presented to support the existence of an unofficial policy. In other words, common issues predominate in those cases where the plaintiff proffers sufficient evidence to demonstrate that an unofficial policy exists and applies uniformly to all class members.'" *Durham, supra*, at *24-25 (quoting *Campbell*, 2015 U.S. Dist. LEXIS 155512, 2015 WL 7176110, at *7).

In *Campbell,* the district court explained:

> Indeed such a rule comports entirely with the requirement under Rule 23(b)(3) because if there is no evidence of a uniform company policy, then the case largely rests on the individual circumstances of each employee's missed meal breaks. Lower courts addressing this issue have consistently hewed the same line and looked to whether the plaintiff has adduced sufficient evidence demonstrating a uniform or over-arching policy. Determining whether a plaintiff has offered "sufficient evidence" is, of course, not an exact science, but the lower court decisions on this issue provide a landscape within which to locate the instant case.

*Campbell, supra,* 2015 WL 7176110 at *19. *Campbell* also recognized that courts generally hold that sufficient evidence of an unofficial policy exists where the

plaintiff offers multiple declarations from employees attesting to the uniform application of the policy. *Id.*

In *Bell,* the employer argued, as Bojangles does here, that it did not have an unofficial policy of denying overtime pay and claimed that "[e]ach class member who chooses to bring a claim for unpaid overtime, [ ] would still be required to prove each element of the off-the-clock claim: that they worked overtime, that their manager knew or had reason to know of the work, and that it caused them to work more than 40 hours in a week." The Seventh Circuit explained  the employer's argument misunderstood the nature of the proposed class' claim:

> The class' claim is that they have been denied overtime pay because of an unofficial policy that either prohibited or discouraged [ ] employees from seeking overtime pay. If, on the merits, the district court were to determine that there was no such unofficial policy [ ], then all of the class members' claims would fail in unison. They may have an individual claim that remains, but it would be based on an entirely different legal theory. Instead, the individual claim would be one by individual Employee A alleging that her manager, Manager B, forced her to work off-the-clock without pay.

*Bell, supra,* 800 F.3d 360 at 378.

Overall, Plaintiffs' evidence shows not only that Bojangles had an unwritten policy to violate its written policy, but that the common question would predominate over individual issues. The number of shift managers making the

same allegations across multiple states, store locations, managers, shifts, and time frames has reached a point from which it may be inferred that the common issue of whether a company-wide policy existed to deny paying wages for all hours worked will, in fact, predominate over the variations in methods used to accomplish the alleged policy.

Bojangles also argues that common questions do not predominate on the time shaving issue because some time edits might have been legitimate if a shift manager forgot to clock in or out. However, Bojangles has admitted to destruction of electronic data and written records which has created an obstacle in separating the legitimate from the illegitimate time edits. Plaintiffs have a long-pending motion for an adverse jury instruction on this exact issue. JA3882-4002; JA4078-4099. Bojangles continued to delete written records after this case was filed that would have allowed a factfinder to determine exactly which time edits were authorized by Plaintiff pursuant to Bojangles' own written policy requiring all time edits to be approved in writing by the employee whose time was edited. JA3892-3893; JA4086-4087. Furthermore, Bojangles previously maintained, at the store level, electronic records showing who made each time edit and how much time was deleted or added, which would assist Plaintiffs in proving if the edit was legitimate or not, but Bojangles deleted all of this data after the case was filed. JA3892-2893; JA4082-4086; Doc. No. 292-2 at 36:8-44:3; 60:2-66:1; 154:9-20;

38

218:2-224:20 (Bojangles' 30(b)(6) deposition). In this sense, with scores of deleted data and records, it most likely will become essentially irrelevant (to a jury at least) whether some time edits were legitimate, because the jury will have been given an adverse instruction regarding Bojangles' wholesale deletion and destruction of critical evidence.

Again, Bojangles' chosen defense effectively defeats its predominance argument just as it did its commonality argument. To wit, since Bojangles insists that it does not maintain an unwritten policy to work shift managers off the clock and that none of it happened in any location, nor could it ever happen, then a failure of proof on Plaintiffs' part on this issue will end the case. The whole class will prevail or fail in unison on the claim of having an unwritten policy to work shift managers off the clock. This is the epitome of having a predominating common question of fact and law. The district court's factual findings are presumptively correct and conclusive unless plainly wrong. Since they are plausible in light of the entire record, there is no basis for reversing the district court's ruling.

Bojangles' countervailing argument that numerous individualized inquiries would be necessary to resolve Plaintiffs' claims of off-the-clock work, such as variations in the amount of uncompensated time or its frequency, variations in whether some putative class members performed certain tasks off the clock, and

variations in the extent of and circumstances surrounding off the clock work varies, related to individual damages. "Rule 23 contains no suggestion that the necessity for individual damages determinations destroys commonality, typicality, or predominance." *Myers v. Loomis Armored US, LLC*, 2019 U.S. Dist. LEXIS 123884, 2019 WL 3338172, at *6, fn. 7 (W.D.N.C. July 25, 2019) (unpublished), citing *Gunnells* 348 F.3d at 427-28; see also *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513- 514 (9th Cir. 2013) ("damages determinations are individual in nearly all wage-and-hour class actions," and it is well-established that predominance is not defeated due to the necessity of individualized inquiries at the damages stage of litigation.").

It is also immaterial that Bojangles violated its own policy in multiple different ways. Bojangles argues that not every Plaintiff went to the bank off the clock, or did training off the clock, or closing tasks off the clock, or opening tasks off the clock, or errands off the clock or picked up product off the clock or attended mandatory meetings off the clock or did extra cleaning off the clock. However, these arguments do not defeat certification because the common harm that putative class members were subjected to is that they were worked off the clock, not that they did certain tasks off the clock. Giving Bojangles a "pass" on certification because it found so many different ways to make shift managers work off the clock will just encourage other employers to do the same. If certification

can be denied because an employer worked employees off the clock ten different ways instead of just one way, then this creates an incentive for employers to diversify their wage theft. This Court should not encourage such behavior and instead should affirm the district court's legally sound and factually supported decision to certify the North Carolina and South Carolina classes.

## CONCLUSION

For the foregoing reasons, Plaintiffs/Appellees respectfully request this Court affirm the district court's ruling granting Plaintiffs/Appellees' motion for class certification as to the North Carolina and South Carolina classes.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs/Appellees do not oppose Defendant/Appellant's request for oral Argument, should the Court deem it to be necessary.

Respectfully submitted this 20th day of March 2024.


*/s/ L. Michelle Gessner*
L. Michelle Gessner, NCSB#26590
GESSNERLAW, PLLC
602 East Morehead Street
G.G. Galloway House
Charlotte, North Carolina 28202
Tel: (704) 234-7442; Fax: (980) 206-0286
Email: michelle@mgessnerlaw.com

*Class Counsel for Plaintiffs-Appellees*

41

# CERTIFICATE OF COMPLIANCE

This Response Brief complies with the type-volume limitation of Local Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 9625 total words, as determined by the word-count function of Microsoft Word, excluding the parts of the Response exempted by Local Rules of Appellate Procedure 32(f).

This Response Brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Date:  March 20, 2024

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NCSB#26590
GESSNERLAW, PLLC
602 East Morehead Street
G.G. Galloway House
Charlotte, North Carolina 28202
Tel: (704) 234-7442; Fax: (980) 206-0286
Email: michelle@mgessnerlaw.com

*Class Counsel for Plaintiffs/Appellees*