No. 23-2287

## In the United States Court of Appeals
### for the Fourth Circuit

ROBERT E. STAFFORD, JR., MELISSA BONETTI, HERBERT
MALLET, JACQUELINE JOHNSON, CATHRINE ALLEN, DEVRON
JONES, TABITHA DANIEL, LAQUASHA OSAGHEE and RONDA
COLE, on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellees*,

v.

BOJANGLES' RESTAURANTS, INC.,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Western District of North Carolina

**REPLY BRIEF OF APPELLANT
BOJANGLES' RESTAURANTS, INC.**

Charles E. Johnson
Douglas M. Jarrell
Brendan P. Biffany
Emma T. Kutteh
ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
(704) 377-2536

*Counsel for Bojangles' Restaurants, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................ii

INTRODUCTION ............................................................................... 1

ARGUMENT ...................................................................................... 3

    I.    Like the District Court, Plaintiffs Ignore the Evidence and Misstate the Court's Obligation to Conduct a Rigorous Analysis of the Evidence ......................................... 3

    II.    The District Court Abused Its Discretion in Holding that Plaintiffs Met Rule 23(a)'s Commonality Prerequisite. ........................................................................... 9

        A.    Plaintiffs' Opening Checklist Theory Does Not Meet the Commonality Standard. ................................ 9

        B.    Plaintiffs' "Unofficial Policy" Theory Does Not Meet the Commonality Standard. ............................. 15

    III.    The District Court Abused Its Discretion in Holding that Plaintiffs Met Rule 23(b)(3)'s Predominance Requirement. ...................................................................... 23

CONCLUSION ................................................................................. 30

CERTIFICATE OF COMPLIANCE ...................................................... 32

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ................................................................ 25

*Anderson v. Mt. Clemens Pottery Co.,*
328 U.S. 680 (1946) ............................................................... 10

*Bailey v. TitleMax of Georgia, Inc.,*
776 F.3d 797 (11th Cir. 2015) ............................................... 28

*Brayman v. KeyPoint Gov't Sols., Inc.,*
83 F.4th 823 (10th Cir. 2023) ......................................... 14, 24

*Brown v. Nucor Corp.,*
785 F.3d 895 (4th Cir. 2015) ......................................... 23, 30

*Campbell v. Vitran Express, Inc.,*
No. 11-5029, 2015 WL 7176110 (C.D. Cal. Nov. 12, 2015) ............. 26

*Doyel v. McDonald's Corp.,*
No. 4:08-cv-1198, 2010 WL 3199685 (E.D. Mo. Aug. 12, 2010) ........... 29

*Duncan v. Governor of Virgin Islands,*
48 F.4th 195 (3d Cir. 2022) ...................................................... 7

*Ealy v. Pinkerton Gov't Servs., Inc.,*
514 F. App'x 299 (4th Cir. 2013) ..................................... 8, 14

*Ferreras v. Am. Airlines, Inc.,*
946 F.3d 178 (3d Cir. 2019) ........................... 8, 16, 23, 27

*Gen. Tel. Co. of Sw. v. Falcon,*
457 US. 147 (1982) ................................................................. 15

*In re Bank of Am. Wage and Hour Emp. Litig.,*
286 F.R.D. 572 (D. Kan. 2012) ............................................. 27

*In re Hydrogen Peroxide Antitrust Litig.,*
552 F.3d 305 (3d Cir. 2008) ..................................................... 4

*In re Lamical Direct Purchaser Antitrust Litig.*,
   957 F.3d 184  (3d Cir. 2020) ................................................................. 3

*Koike v. Starbucks Corp.*,
   378 F. App'x 659 (9th Cir. 2010) ...................................................... 27

*M.D. ex rel. Stukenberg v. Perry,*
   675 F.3d 832 (5th Cir. 2012) ........................................................ 4, 5

*Madison v. Chalmette Refining, LLC,*
   637 F.3d 551 (5th Cir. 2011) ............................................................ 3

*O'Bannon v. Nat'l Collegiate Athletic Ass'n,*
   802 F.3d 1049 (9th Cir. 2015) .......................................................... 6

*Pryor v. Aerotek Scientific, LLC,*
   278 F.R.D. 516 (C.D. Cal. 2011) ...................................................... 28

*Romulus v. CVS Pharm., Inc.,*
   321 F.R.D. 464 (D. Mass. 2017) ...................................................... 21

*Ruiz v. Citibank, N.A.,*
   93 F. Supp. 3d 279 (S.D.N.Y. 2015) ......................................... 16, 21

*United States v. Daniels,*
   41 F.4th 412 (4th Cir. 2022) ............................................................. 6

*Vega v. T-Mobile USA, Inc.,*
   564 F.3d 1256 (11th Cir. 2009) ................................................. 24, 30

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) ............................................................... passim

## INTRODUCTION

In its opening brief, Bojangles described how the district court's decision to certify classes of North Carolina and South Carolina shift managers was an abuse of its discretion. The district court failed to rigorously analyze the evidence presented, erroneously lowered the standard of review to that of a mere pleading standard, failed to conduct any predominance analysis, and misapplied the commonality and predominance standards.

In their brief attempting to support the district court's ruling, Plaintiffs make many of these same errors. Principally, Plaintiffs expressly ignore the record evidence, stating that they "will not venture down into the factual weeds" and erroneously casting any inquiry into the evidence as "irrelevant." Instead, Plaintiffs argue that they meet Rule 23's requirements based on their allegations and conclusory characterizations, unsupported by facts. Indeed, just as the district court failed to cite any evidence in support of its predominance holding, Plaintiffs do not once point to any evidence in their attempt to support the district court's conclusion on predominance. But Rule 23 and

Supreme Court precedent require more than allegations and characterizations to support class certification.

Plaintiffs ignore the evidence because it demonstrates that Plaintiffs' claims cannot meet either the commonality or predominance requirements of Rule 23. Plaintiffs' varied claims to compensation do not arise from any common, company-wide policy or practice that could meet the commonality standard set forth by the Supreme Court in *Wal-Mart*, and the individualized inquiries necessary to resolve each separate shift manager's claim preclude a finding that any common question predominates over individual ones. The district court's ruling to the contrary was based on an insufficient analysis of the evidence, the application of an incorrect standard of review, and a material misapplication of the commonality and predominance standards. The decision to certify the North Carolina and South Carolina classes constituted an abuse of the district court's discretion. This Court should reverse the district court's class certification order and hold that Plaintiffs' claims cannot proceed on a class-wide basis.

# ARGUMENT

## I. Like the District Court, Plaintiffs Ignore the Evidence and Misstate the Court's Obligation to Conduct a Rigorous Analysis of the Evidence.

As Bojangles stated in its opening brief, a district court must conduct a "rigorous analysis" to determine whether all of the Rule 23 requirements to certify a class have been met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). The failure to conduct such a rigorous analysis is an abuse of the district court's discretion. *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 194 (3d Cir. 2020) ("Here, the District Court abused its discretion when it assumed, absent a rigorous analysis, that averages are acceptable."); *Madison v. Chalmette Refining, LLC*, 637 F.3d 551, 556 (5th Cir. 2011) ("We hold that the district court abused its discretion by failing to afford its predominance determination the 'rigorous analysis' that Rule 23 requires.").

Plaintiffs argue that the district court sufficiently analyzed the commonality and predominance requirements because it recited the Rule 23 elements and quoted *Wal-Mart* for the proposition that Plaintiffs must prove commonality in fact. Resp. at 14; *see also id.* at 32 ("The district court's analysis tracked the language of Rule 23(b)(3)."). However,

reciting the required elements and applicable standard is not the equivalent of a rigorous analysis of the evidence to determine whether the Rule 23 requirements have been met. Rather, a rigorous analysis requires the district court to "*resolve factual disputes* by a preponderance of the evidence and *make findings* that each Rule 23 requirement is met or is not met, having considered *all relevant evidence and arguments* presented by the parties." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008) (emphasis added).

For example, in *M.D. ex rel. Stukenberg v. Perry*—a case on which Plaintiffs claim to rely—the Fifth Circuit held that a district court failed to conduct a rigorous analysis of the evidence when it "merely found that the Named Plaintiffs' various allegations . . . raised common questions of fact" but "did not indicate how the resolution of the alleged common question of fact would decide an issue that is central to [the claims] of every class member at the same time." 675 F.3d 832, 841 (5th Cir. 2012). The district court's analysis was also insufficiently rigorous, the Fifth Circuit held, because the court "conducted no analysis of the elements and defenses for establishing any of the proposed class claims, nor did it

adequately explain how those claims depend on a common legal contention." *Id.* at 842.

The district court's decision here suffers from the same defects as those identified by the Fifth Circuit in *Stukenberg*—the district court accepted as true Plaintiffs' allegation that they were required to work off the clock pursuant to the Opening Checklist and, without analyzing the parties' competing evidence or the elements of the claims and defenses, concluded that the Opening Checklist created an unspecified common question of fact. JA4106.

Just as the district court failed to rigorously analyze the evidence on class certification, in their response brief Plaintiffs expressly refuse to "venture down into the factual weeds." Resp. at 5. Plaintiffs attempt to justify their and the district court's lack of engagement with the evidence by casting any evaluation of the evidence as an improper inquiry into the merits of Plaintiffs' claims. Plaintiffs describe the facts as "largely irrelevant," *id.*, scold Bojangles for "citing to specific testimony," *id.* at 31, and incorrectly describe Bojangles' statement of the case as a "'dress rehearsal' for the trial on the merits," *id.* at 21.

Instead of engaging with and citing to specific evidence, Plaintiffs offer their conclusory contentions about the evidence *in toto* in an attempt to convince the Court that their claims are proper for class treatment. For example, throughout their brief Plaintiffs accuse Bojangles of having an unwritten policy to require off-the-clock work—once going so far as to speculate that it is a "business model"—without citing to any specific evidence. *See id.* at 4, 29, 31. Likewise, Plaintiffs state that class members had the "same experiences" and make the "same allegations" but cite no evidence to support these characterizations. *Id.* at 29, 38. Plaintiffs' unsupported statements in their response brief are not evidence and cannot sustain a class action. *See United States v. Daniels*, 41 F.4th 412, 415 (4th Cir. 2022) ("Counsel's unsupported claim is not evidence."); *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 802 F.3d 1049, 1067 n. 11 (9th Cir. 2015) ("Statements in appellate briefs are not evidence."). Plaintiffs do not point to specific evidence to support their characterizations because, as Bojangles explained in its opening brief, the evidence demonstrates that Plaintiffs do *not* assert the same claims and thus class treatment of their claims is inappropriate.

Furthermore, Plaintiffs' argument that a detailed examination of shift managers' declaration and deposition testimony is an improper analysis of the merits of Plaintiffs' claims misapprehends both the Court's obligation on class certification and the standard of review. Of course, the Court cannot meet its obligation to rigorously analyze the evidence to determine whether Rule 23's requirements are met if it does not examine the evidence. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). A refusal to examine the parties' evidence would also prevent the Court from determining whether Plaintiffs have proven compliance with Rule 23's requirements "in fact," thereby lowering the standard of review to the "mere pleading standard" *Wal-Mart* prohibits. *Id.* at 350.[1]

The evidence Bojangles presented to the district court and in its opening brief relates not to the merits of Plaintiffs' claims, but to Plaintiffs' inability to meet Rule 23's requirements. The district court's

---

[1] Plaintiffs argue that the district court could not have applied a "pleading standard" because their Opening Checklist theory does not appear in their Complaint. Resp. at 8; *see also id.* at 16. This argument misconstrues the term "pleading standard." Applying a pleading standard does not mean relying just on the content of the complaint, but rather "accept[ing] as true all factual allegations from a proposed class representative," including those presented in the moving papers. *Duncan v. Governor of Virgin Islands*, 48 F.4th 195, 210 (3d Cir. 2022).

failure to rigorously analyze that evidence is an abuse of its discretion. *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 305-06 (4th Cir. 2013).

Relying on *Stukenberg*, Plaintiffs argue that at best this Court is compelled to remand to the district court with instructions to conduct a rigorous analysis of the evidence. Resp. at 34. Unlike in *Stukenberg* where the plaintiffs moved for class certification within a week of filing their complaint, the parties here have engaged in years of discovery, exchanged nine expert reports, and presented thousands of pages of evidence to the district court. A rigorous analysis of the record evidence leads only to the conclusion that class certification is improper here, making it unnecessary to require the district court to conduct that analysis in the first instance. *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 184-85 (3d Cir. 2019) ("[B]ecause discovery was essentially complete when the District Court ruled on the motion for class certification . . . we will reverse rather than remand, as, based on our review of the record, it is clear that commonality and predominance cannot be met.").

II. **The District Court Abused Its Discretion in Holding that Plaintiffs Met Rule 23(a)'s Commonality Prerequisite.**

Plaintiffs argue in their response brief that the district court correctly concluded that each of their two theories—the "Opening Checklist" theory and the "unofficial policy" theory—satisfy Rule 23(a)'s commonality prerequisite. Plaintiffs' arguments, however, are not supported by the record evidence and are based on distortions of the district court's order and applicable law. Neither theory creates a question that meets the commonality standard set forth by the Supreme Court in *Wal-Mart*.

A. **Plaintiffs' Opening Checklist Theory Does Not Meet the Commonality Standard.**

In its order granting certification of the North Carolina and South Carolina classes, the district court concluded, without explanation, that the Opening Checklist creates an unspecified common question of fact sufficient to certify all of Plaintiffs' claims. JA4106-07. As Bojangles explained in its opening brief, the district court reached this conclusion by impermissibly relying on Plaintiffs' allegations in their moving papers rather than the evidence presented to it and by misapplying the commonality standard. Opening Br. at 37-45. In their response brief,

Plaintiffs argue that the district court's decision was correct but fail to explain how the Opening Checklist satisfies *Wal-Mart*'s commonality standard.

Plaintiffs claim repeatedly that the Opening Checklist creates a common question because "on its face" it requires off-the-clock work. Resp. at 15, 16, 19. Plaintiffs, however, do not cite any evidence to support this argument, engage with the content of the Opening Checklist, or otherwise explain how the document requires off-the-clock work. *Id.* The Opening Checklist establishes no such requirement. As Bojangles explained in its opening brief, the Opening Checklist instructs opening shift managers to clock in immediately after driving around the parking lot, unlocking the doors, and disarming the alarm. Opening Br. at 39-40 (citing JA253). No plaintiff has alleged that he or she should be compensated for time spent driving through the parking lot, unlocking the restaurant, or disarming the alarm system.[2] Thus, the Opening

---

[2] Plaintiffs could not assert such a claim in any event, because the time spent performing those tasks is undoubtedly *de minimis*. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946) ("When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded.").

Checklist does not on its face require any of the off-the-clock work Plaintiffs allege and does not on its face create a question "central to the validity" of Plaintiffs' claims. *Wal-Mart*, 564 U.S. at 350.

Moreover, Plaintiffs admit that the district court reached its conclusion that the Opening Checklist required Plaintiffs to work off the clock (and thus created a common question) by relying exclusively on allegations in Plaintiffs' class certification brief. Resp. at 15-16 (admitting that the district court cited only to "Plaintiffs' Memorandum of Law in Support of their Motion to Certify"). The district court's reliance on allegations in Plaintiffs' brief rather than the parties' evidence is a fundamental misapplication of the Rule 23 standard. *See Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 320 (noting that a rigorous analysis requires the district court to "resolve factual disputes" and consider "all relevant evidence"); *Wal-Mart*, 564 U.S. at 350 ("Rule 23 does not set forth a mere pleading standard.").

Questions surrounding the Opening Checklist cannot meet the Supreme Court's commonality standard because not all plaintiffs claim to have performed pre-opening work off the clock, or even to have worked opening shifts. Opening Br. at 39-40. Moreover, just one plaintiff,

Ka'terris Kintchen, attributed his off-the-clock work to any form of checklist. *See* JA1327 (Kintchen Decl. ¶ 4). Moreover, Mr. Kitchen's declaration states that the work included "check[ing] on the customer," demonstrating that the supposed checklist to which he referred is not the Opening Checklist. *Id.* Because many plaintiffs do not assert claims based on pre-opening work and no Plaintiff alleges that he or she worked off the clock pursuant to the Opening Checklist, answering questions surrounding the legality of the Opening Checklist could not possibly "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.

In their response brief, Plaintiffs claim that the declarations they presented to the district court "specifically reference performing tasks under step one on the Opening Checklist." Resp. at 19. But *none* of the eighteen declarations Plaintiffs cite for that proposition references the Opening Checklist. Instead, those declarants assert that they performed varying off-the-clock work before all types of shifts, much of which could not relate to the opening shift. *See, e.g.*, JA1182 (Reaves Decl. ¶ 4) (stating he worked off the clock before his shift to "clean the tables, [and] do tasks that the prior shift did not do"); JA1365 (Chamberlain Decl. ¶ 5)

("When I arrived at work, before I clocked in, I had to walk around store, make sure everything was labeled, etc. check bath rooms etc.").

The handful of deposition passages Plaintiffs cite also contain testimony not relevant to the Opening Checklist. For example, Plaintiffs cite to a portion of Kenya Oladini's deposition in which she testified that she sometimes, but not always, performed her "walkthrough" off the clock and that the time she spent depended on if there was a "long line around the drive-through." JA509 (Oladini Dep. 52:1-20). Of course, there is no line at the drive-thru window before the restaurant opens to the public. *See also* JA2694-95 (Griffith Dep. 78:8-79:15) (plaintiff Ania Griffith testifying that before clocking in she would "make sure cars parked in the right [spot]").

The declaration and deposition evidence Plaintiffs cite confirms that the Opening Checklist is neither central nor relevant even to Plaintiffs' claims of pre-opening off-the-clock work. Thus, questions surrounding the Opening Checklist could not "generate common *answers* apt to drive the resolution" of Plaintiffs' claims based on that work, let alone their claims based on the multitude of other tasks Plaintiffs claim to have performed without pay. *Wal-Mart*, 564 U.S. at 350.

Like the district court, Plaintiffs make no effort to connect the Opening Checklist to their claims for time shaving or other off-the-clock work, such as taking bank deposits, transporting employees, or traveling between restaurants. There is no connection. The district court had no logical basis on which to conclude that the Opening Checklist sufficed to meet the commonality prerequisite for those claims. *See Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 841 (10th Cir. 2023) (holding district court abused its discretion when it failed to perform a "claim-specific analysis" of the plaintiffs' various claims to compensation).

In sum, Plaintiffs fail to point to evidence that could support the district court's commonality holding based on the Opening Checklist and concede that the district court relied only on the allegations in their brief to support its decision. The district court's reliance on mere allegations, failure to rigorously analyze the evidence, and misapplication of the *Wal-Mart* commonality standard caused the district court to conclude incorrectly that questions surrounding the Opening Checklist satisfied the commonality prerequisite. The district court's failings constitute an abuse of its discretion. *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 305-06 (4th Cir. 2013). This Court should reverse the district court

and hold that questions surrounding the Opening Checklist do not satisfy the commonality prerequisite.

**B.    Plaintiffs' "Unofficial Policy" Theory Does Not Meet the Commonality Standard.**

Plaintiffs' second theory—that Bojangles had an unofficial policy to require off-the-clock work—likewise fails to satisfy the commonality requirement.

In its opinion, the district court wrote that "class members are 'unified by a common theory of being worked off the clock,' regardless of the specific uncompensated activities they were required to perform." JA4107. Although that comment appeared in the court's discussion of Rule 23's typicality prerequisite, it provided further explanation of the court's commonality holding. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 US. 147, 157 n. 13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge.").

In its opening brief, Bojangles explained that Plaintiffs' "unofficial policy" theory and the district court's explanation of it are no different from saying Plaintiffs can proceed on a class basis because they all assert a claim for unpaid time worked. Opening Br. at 46. Such a position is contrary to *Wal-Mart*'s commonality principles, including that

commonality "does not mean merely that [putative class members] have all suffered a violation of the same provision of law" because that alone "gives no cause to believe that all their claims can productively be litigated at once." 564 U.S. at 350; *see also Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 181-87 (3d Cir. 2019) (rejecting argument that common claim to unpaid time worked could meet commonality prerequisite).

Plaintiffs attempt to support the district court's ruling and their "unofficial policy" theory by arguing that commonality is satisfied when plaintiffs challenge "a systemwide practice or policy that affects all of the putative class members." Resp. at 24. Plaintiffs claim that they presented the district court with a "critical mass" of anecdotal evidence in support of such a practice or policy, which they assert was sufficient to support a finding of commonality. *Id.* at 26.

Plaintiffs disregard their evidentiary obligation and ignore critical language in the cases they cite. Significant anecdotal evidence of a company-wide policy or practice can serve to support a finding of commonality, but only if that evidence shows that the policy applied to *all* class members and manifested itself in a *uniform fashion. See Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 289 (S.D.N.Y. 2015) ("[P]laintiffs must

present enough evidence to confidently suggest a uniform, or nearly uniform, practice occurring across branch offices."); *Wal-Mart*, 564 U.S. at 353 (observing that "significant proof" of a general policy could justify a class if the evidence showed the policy "manifested itself . . . in the same general fashion"). In such a circumstance, proof of the existence of the alleged unofficial policy would resolve an issue central to all class members' claims.

Plaintiffs mistakenly assert that if they can amass a large number of declarations in which shift managers claim to have worked off the clock, the sheer volume of testimony supports class certification regardless of the nature of the declarants' claims. *See* Resp. at 29. But Plaintiffs' declarations and deposition testimony fail to show a uniform unofficial policy that applies to all class members. Indeed, the evidence shows the opposite. This leaves Plaintiffs without any glue holding their varied claims together and without any question whose answer would "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.

Rather than show Plaintiffs' alleged uncompensated time is connected to a single, uniform policy, Plaintiffs' declarations and

deposition testimony demonstrate that the work they claim to have performed and the reasons that work supposedly went uncompensated vary by person and by restaurant. *See, e.g.,* JA625-29 (Goldberg Rep. ¶¶ 20-27); JA772 (Kriegler Rep. Ex. 5) (Plaintiffs' expert compiling differences in the work Plaintiffs allege went uncompensated). And even those who claim to have performed the same work without pay testified that their experiences regarding the frequency and duration of that work varied drastically. *Compare, e.g.,* JA402-04 (Griffin Dep. 38:23-40:13) (testifying he occasionally went to the bank off the clock when working at one location, but always remained on the clock when working at a different location) *with* JA283-86, JA289 (Armstrong Dep. 42:3-45:7, 62:18-20) (never instructed to take the deposit to the bank off the clock) *with* JA491-95 (Malone Dep. 22:1-26:23) (always took the deposit while off the clock).

Rather than tie their alleged off-the-clock work to a particular company policy, Plaintiffs gave varying and inconsistent reasons for their unpaid time. Some testified that their managers never told them to work off the clock and that they chose to work off the clock on their own initiative. *See, e.g.,* JA533, JA536-44, JA549 (Stafford Dep. 89:17-21,

133:4-141:21, 154:7-16); JA434-36 (Johnson, D. Dep. 37:3-39:5); JA388,
JA392 (Goewey Dep. 22:19023, 26:8-10); JA479 (LaDuca Dep. 66:4-10).
Others, by contrast, testified that their managers required them to clock
out and keep working. Those who attributed their unpaid time to their
managers, however, also testified that the instructions varied from
manager to manager. *See, e.g.*, JA316-17 (Brown Dep. 26:16-27:5)
(testifying her manager required her to clock out once she recorded 40
hours); JA369 (Fancher Dep. 33:7-23) (testifying his manager enforced a
50-hour cap); JA450 (Johnson, J. Dep. 53:3-5) (testifying her manager
required her to clock out "when the labor was high").[3]

Plaintiffs' testimony regarding time shaving likewise fails to
connect their allegations to any company-wide policy or practice that

---

[3] Plaintiffs point the Court to a "compilation of cites" they prepared,
located at JA3826-30, which purports to contain references to evidence
supporting that they were instructed to work off the clock or could not
receive overtime compensation. *See* Resp. at 29. An inspection of the
evidence underlying Plaintiffs' compilation shows that many, if not most,
of the citations do not support the propositions Plaintiffs claim. For
example, Plaintiffs cite Jacqueline Johnson's deposition testimony for the
proposition that she was instructed to work off the clock. JA3830. The
passage Plaintiffs cite, however, contains no testimony to that effect, and
Johnson actually testified that employees were ***not*** supposed to work off
the clock. JA2903-04 (Johnson, J. Dep. 54:25-55:5).

applied to all shift managers. Indeed, many shift managers admitted in their interrogatory responses that their time was *not* shaved, confirming that Plaintiffs' time shaving claims *cannot* be tied to any uniform, company-wide policy. JA772 (Kriegler Rep. Ex. 5); *see also* JA862-64 (Woolfson Rep. ¶ 42) (Plaintiffs' expert concluding that less than 0.4% of the shifts he studied included a downward adjustment to time worked).

Critically, Plaintiffs do not present internal memoranda, documentation, or testimony from Bojangles' senior employees to support the existence of an unofficial policy requiring off-the-clock work or to shave time. There is no such evidence. In fact, multiple class members who were promoted past shift manager themselves testified that no such policy exists and that they never shaved time or required shift managers to work off the clock. Plaintiff Melissa Bonetti testified, for example:

> Q. (By Mr. Church) Ms. Bonetti, when you worked as an assistant unit director did you ever instruct any of your employees to work off the clock?
> A. No.
> Q. And you understood that would be a violation of company policy, right?
> A. Yes, and morally.

JA309 (Bonetti Dep. 52:3-9); *see also* JA422 (Howze Dep. 50:9-17) (testifying that as a unit director she never shaved an employee's time

because she "could lose my job for that"); JA504 (Manock Dep. 20:11-22) (testifying that no shift manager worked off the clock while he was an assistant manager and that he was trained "that you clock in to work and you clock out when you leave").[4]

Plaintiffs' anecdotal evidence is the antithesis of that required to connect class members' claims to a single, class-wide policy or practice that could meet the commonality prerequisite in a wage and hour case after *Wal-Mart*. *See, e.g.*, *Romulus v. CVS Pharm., Inc.*, 321 F.R.D. 464, 469-70 (D. Mass. 2017) (holding plaintiffs failed to meet commonality prerequisite when their "testimony regarding whether they were paid for meal breaks for which they remained in store, and if not, why, varies by the individual"); *Ruiz*, 93 F. Supp. 3d at 291-92 (relying on *Wal-Mart* to hold plaintiffs failed to meet commonality prerequisite when they relied

---

[4] In their response brief, Plaintiffs cite boilerplate declarations to argue that shift managers were told they could only record forty hours per week and that their time was shaved when they worked more than forty hours. Resp. at 27-28. But this argument is a red herring because Plaintiffs did not attempt to earn class certification based on a theory that Bojangles categorically failed to pay shift managers for overtime worked. Nor could they. It is undisputed that Bojangles paid shift managers for more than 339,000 hours of overtime between 2017 and 2021, ECF No. 255-3 (Chase Decl. ¶ 17), and that some were paid for more than 500 hours of overtime during their employment, JA631-32 (Goldberg Rep. ¶ 33).

on anecdotal evidence that contained "contradictions and heterogeneity").

Unlike in *Wal-Mart*, where plaintiffs attempted to connect their claims through an alleged policy of allowing local managers discretion in hiring and promotion decisions, *see* 564 U.S. at 355, here Plaintiffs fail to identify *any* specific alleged policy they challenge. Instead, they testified that they worked off the clock for varying and contradictory reasons, claim in their brief that they did so "to reduce costs," and ask the Court to *infer* the existence of a policy that could unite their claims. Resp. at 30-31.[5] But Plaintiffs cannot rely on an inference—they bear the burden of proving commonality "in fact." *Wal-Mart*, 564 U.S. at 350. The evidence

---

[5] Plaintiffs base their request for such an inference in part by referencing a prior lawsuit filed by shift managers against Bojangles, intimating that their claims have merit because other shift managers have pursued similar ones in the past. *See* Resp. at 29. The consistency of allegations between this lawsuit and the *Sommerville* case is no accident—Plaintiffs copied material portions of their Second Amended Complaint word for word from the *Sommerville* complaint. *Compare* JA114-19 (2d. Am. Compl. ¶¶ 41-44, 51-53) *with* JA3544-47 (*Sommerville* Compl. ¶¶ 22-25, 29-31). Bojangles settled *Sommerville* for a nuisance value of $8,500. *Sommerville v. Bojangles' Rest., Inc.*, No. 1:17-cv-565, Doc. 40 (M.D.N.C. Nov. 16, 2018).

presented to the district court confirms Plaintiffs cannot meet that burden.

Plaintiffs' view that they can obtain class action status based solely on a random assemblage of claims for allegedly uncompensated time worked is untenable after *Wal-Mart*. *See Ferreras*, 946 F.3d at 186 (holding that the question whether hourly-paid employees were not being compensated for all hours worked did not meet the commonality standard because that question could not generate a common answer apt to drive resolution of the case). The district court's acceptance of Plaintiffs' "common theory of being worked off the clock," JA4107, was a manifestly erroneous interpretation of *Wal-Mart*'s commonality standard and an abuse of discretion. *See Brown v. Nucor Corp.*, 785 F.3d 895, 902 (4th Cir. 2015) ("A district court abuses its discretion when it materially misapplies the requirements of Rule 23."). This Court should reverse the district court and hold that Plaintiffs' "unofficial policy" theory does not satisfy the commonality prerequisite.

## III. The District Court Abused Its Discretion in Holding that Plaintiffs Met Rule 23(b)(3)'s Predominance Requirement.

The district court failed to conduct a predominance analysis and, in finding the predominance requirement met, conflated predominance with

commonality. *See* Opening Br. at 52-54. Plaintiffs argue that the district court's predominance analysis was sufficient because it "tracked the language of Rule 23(b)(3)." Resp. at 32. But stating the language of the rule is not the equivalent of properly applying it. Plaintiffs do not contest that the district court's order fails to characterize the issues relevant to their claims as "common or individual" and then "weigh the issues to determine whether the common issues predominate." *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 838 (10th Cir. 2023). The district court's failure to perform that analysis is an abuse of its discretion. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009).

Like the district court's order, Plaintiffs' response brief fails to include a single citation to *any* record evidence supporting the assertion that their off-the-clock claims meet the predominance requirement. *See* Resp. at 32-41; JA4109-12 (Order). Without citing to evidence, let alone analyzing it, neither the district court nor Plaintiffs can support a finding that common questions relating to Plaintiffs' claims predominate over individual ones. *See Wal-Mart*, 564 U.S. at 350 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule" by proving the Rule 23 requirements "in fact."). Indeed, Plaintiffs

do not even mention the Opening Checklist in their predominance argument, and they fail entirely to explain how any questions surrounding it could predominate over individualized issues relating to Plaintiffs' claims. *See* Resp. at 32-41.

Plaintiffs' predominance argument is no different from their commonality argument. Plaintiffs claim that predominance is met because Plaintiffs have raised the question whether Bojangles employed an unofficial policy to require off-the-clock work. *Id.* at 36-37. But this argument mirrors the district court's flawed analysis by conflating the predominance requirement with the commonality prerequisite, and it ignores that the predominance requirement is "far more demanding" than commonality. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997).

As Bojangles showed above and in its opening brief, the question whether Bojangles employed such an "unofficial policy" is not one that meets the commonality prerequisite, let alone the predominance requirement. Plaintiffs cite to a handful of unreported district court cases holding that predominance may be met when the plaintiff presents "sufficient evidence to demonstrate that an unofficial policy exists and

applies *uniformly* to *all* class members." Resp. at 36 (emphasis added). Those same cases recognize that an alleged unofficial policy cannot meet the predominance requirement when "employees provide testimony indicating that their experiences varied." *Campbell v. Vitran Express, Inc.*, No. 11-5029, 2015 WL 7176110, at *7 (C.D. Cal. Nov. 12, 2015).

Here, the evidence presented to the district court shows that the unofficial policy Plaintiffs allege does not and could not apply uniformly or class-wide. Rather, the evidence shows extreme variations in shift managers' allegations regarding the tasks they performed without pay, the duration and frequency of that work, and the reasons for it. *See* Opening Br. at 57-59. Questions relating to any alleged unofficial policy thus cannot predominate over the individualized issues Plaintiffs' allegations present.

Plaintiffs claim that the resolution of their unwritten policy issue will cause the "whole class to prevail or fail in unison," Resp. at 39, but fail to explain how that could be the case. To the contrary, numerous courts hold that, in cases involving allegations of generalized off-the-clock work, proof of an unofficial policy does *not* meet the predominance requirement. *See* Opening Br. at 55-56 (collecting cases). This is so

because resolving questions about such an unofficial policy "tells us nothing about actual common work habits, if there are any. The plaintiffs will still need to go through the process of proving that each individual employee worked overtime and is thus entitled to additional compensation." *Ferreras*, 946 F.3d at 185.

That process of proving class members' unpaid time worked requires factual determinations on an individual level to resolve issues such as whether the particular shift manager worked unpaid time on any particular day, why he or she did so, for how long, and whether Bojangles had knowledge of that work. These individualized questions far outweigh any issues common to Plaintiffs' claims. *Koike v. Starbucks Corp.*, 378 F. App'x 659, 661 (9th Cir. 2010) (affirming denial of class certification when "individualized factual determinations [would be] required to determine whether class members did in fact engage in off-the-clock work"). For this reason, the "vast majority" of courts find predominance lacking where, as here, plaintiffs assert generalized claims of off-the-clock work. *In re Bank of Am. Wage and Hour Emp. Litig.*, 286 F.R.D. 572, 588-91 (D. Kan. 2012).

Plaintiffs oppose this conclusion by arguing that the individualized questions pervading their claims do not preclude certification because the questions relate solely to damages. *See* Resp. at 40. Plaintiffs are incorrect. Proof that a plaintiff worked uncompensated time is a fundamental element of *liability* in a wage and hour claim. *See Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015) (stating that the elements of an unpaid overtime claim include that "an employee worked unpaid overtime"). Thus, the individualized question whether any particular class member worked uncompensated time "is not merely a question of damages, it is a question of liability." *Pryor v. Aerotek Scientific, LLC*, 278 F.R.D. 516, 532 (C.D. Cal. 2011).

Finally, with respect to Plaintiffs' time shaving claims, in its opening brief Bojangles explained that those claims fail to meet the predominance standard because Plaintiffs admitted in deposition that their time was edited for legitimate reasons, failed to connect their alleged time shaving to any company-wide practice, and mustered no statistical evidence to support such a practice. Opening Br. at 59-60. Accordingly, resolving Plaintiffs' time shaving claims would require evidence "on a time punch-by-time punch basis" to determine whether

any particular shift manager's time was improperly edited on any particular day. *Doyel v. McDonald's Corp.*, No. 4:08-cv-1198, 2010 WL 3199685, at *5 (E.D. Mo. Aug. 12, 2010).

Plaintiffs' only response to Bojangles' argument is their speculation that the individualized inquiries predominating their time shaving claims "most likely will become essentially irrelevant" because Plaintiffs have moved the district court for an adverse jury instruction based on Bojangles' supposed spoliation of time edit records. Resp. at 39. Plaintiffs' argument is untenable. Plaintiffs cannot rely on speculation about the outcome of a motion the district court has not granted to support their request for class certification. *See Wal-Mart*, 564 U.S. at 350.

Plaintiffs' speculation is misguided in any event. The district court has already rejected Plaintiffs' allegations of spoliation, concluding that Plaintiffs could not substantiate any of their six arguments that Bojangles destroyed documents. ECF No. 411. Indeed, the only party to have been sanctioned in this lawsuit is Plaintiffs' counsel. ECF No. 357. That Plaintiffs resort to speculation about an undecided and previously rejected motion confirms they lack any substantive ground on which to support certification of their time shaving claims. For the reasons

Bojangles explained in its opening brief, Plaintiffs' time shaving claims do not satisfy the predominance standard. Opening Br. at 59-60.

Because individualized questions relating to each separate class member's claim predominate over any questions common to Plaintiffs' claims, Plaintiffs fail to satisfy the Rule 23(b)(3) predominance requirement. The district court's decision to the contrary—which was based on its failure to conduct any predominance analysis and its conflation of the commonality and predominance standards—was a material misapplication of Rule 23 and an abuse of discretion. *Brown*, 785 F.3d at 902; *Vega*, 564 F.3d at 1268. This Court should reverse the district court and hold that Plaintiffs' claims cannot meet the predominance requirement.

## CONCLUSION

Plaintiffs fail to point to law or evidence that could support the district court's erroneous rulings on commonality and predominance. By ignoring the evidence, relying on mere allegations, and conflating the predominance and commonality standards, Plaintiffs' response brief suffers from many of the same defects that plagued the district court's ruling.

The district court abused its discretion when it found that Plaintiffs met Rule 23's commonality and predominance requirements and certified the North Carolina and South Carolina classes. This Court should reverse the district court's order and hold that Plaintiffs' claims cannot proceed on a class-wide basis.

This 17th day of April, 2024.

Respectfully submitted,

/s/ Charles E. Johnson
Charles E. Johnson
cejohnson@robinsonbradshaw.com

Douglas M. Jarrell
djarrell@robinsonbradshaw.com

Brendan P. Biffany
bbiffany@robinsonbradshaw.com

Emma T. Kutteh
ekutteh@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone: (704) 377-2536

*Counsel for Defendant-Appellant
Bojangles' Restaurants, Inc.*

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,018 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, using Microsoft Word 2016, in 14-point Century Schoolbook type.

This 17th day of April, 2024.

/s/ Charles E. Johnson
Charles E. Johnson
*Counsel for Defendant-Appellant*
*Bojangles' Restaurants, Inc.*